Cabell, J.
Harris the plaintiff in error leased from Furris a tenement in the county of Augusta, for the term of four years, commencing on the first of April 1S25, and ending on the first of April 1829. There is nothing in the lease purporting to give to the tenant any interest in the land, or in the crops upon it, after the termination of the lease. On the day on which this lease terminated, the same tenement was leased by Furris to Ca.rson the defendant in error, who, in the summer of 1829, proceeded to cut and carry away a part of the crop of small grain which had been sown, the fail before, by the former tenant. The main question presented by the record is, whether the ofigoing or the incoming tenant was entitled to this crop.
The lease in this case having a fixed and certain period for its termination, it is clear, beyond doubt, that the ofigoing tenant had no right, at the common law, to any crops growing on the land, after the termination of the lease, although they may have been sown during his possession of and interest in the land; for it was his own folly to sow, when he knew that his interest would expire before he could reap. The crops are claimed, however, in this case, on the ground of a custom said to prevail in the district of country in which the land lies, that the ofigoing tenant shall have the way-going crops.
The case of Wigglesworth v. Dallison, Doug. Rep. 201. was strongly relied upon by the counsel for the plaintiff in error, as shewing that a custom would, in England, entitle the ofigoing tenant to the waygoing crop, even where, as in this case, the lease was by writing under *638 seal, and to end at a fixed time. But the ground on which lord Mansfield himself placed that decision, shews that it can have no weight in this country. He says “ The custom of a particular place may rectify what otherwise would be imprudence or folly. The lease being by deed does not vary the case. The custom does not alter or contradict the agreement in the lease; it only superadds a right which is consequential to the taking.” I entirely concur in the correctness of this opinion, as applied to a case in England. But it is correct, not on the ground of direct contract, nor because the parties are presumed to have contracted in reference to the custom: it is correct, because of the force of the custom, as such; for, in England, where they have particular customs, the custom of the county in which the land lies is as much the law of that county, as the common law is the law of the other parts of the country where they have no such particular custom. The particular custom prevents the application of the common law to the county or district in which the custom prevails, by shewing that the common law, as to this subject, never had any existence in that county or district. For, a custom, to be valid, must be as old as the common law; it must be immemorial. And if the particular custom be proved to be immemorial, it necessarily excludes the general custom, or common law; for two opposite and inconsistent customs cannot have immemorially existed, in the same place, and as to the same thing.
But the case is widely different in this country. Our ancestors brought with them the common law or general customs of England, but none of the particular customs. The common law became the law of our whole state, and gave the rule to every part of it; and we have seen that, by that law, the offgoing tenant was not entitled to the waygoing crop. Any practice or usage, however general, introduced into this country since its *639 settlement, and in opposition to the common law, can have no force on the ground of custom; because it lacks the essential ingredient of a good custom—it is not immemorial. It is clear that it could not have existed at any time, even as a recent custom, until after the settlement of the country, and after the common law had attached to every part of it. And nobody will contend that a recent usage or practice, however general, will change the common law. Nor is the case of the plaintiff in error helped by the argument, that the custom, although not obligatory as such, may nevertheless be looked to as having been within the contemplation of the parties at the time they contracted, and may therefore be regarded as an exponent of the contract. The principle of explaining a written instrument by parol testimony, applies to those cases only where there is some latent ambiguity in the written instrument, or where its terms have not a definite legal signification. Bowyer v. Martin &c. 6 Rand. 525. Here there is no ambiguity, no uncertainty, no doubt whatever. It is nothing more nor less than a lease for a period fixed and certain, when the interest of the tenant is to cease and determine. To extend it beyond that period by parol testimony, is contrary to received principles, and utterly inadmissible.
I am clearly of opinion that the plaintiff in error was not entitled to the waygoing crop; and this point being decided against him, it is equally clear that the county court ought to have given all the instructions moved for by the defendant in error. It may seem, at first view, that the third instruction is improper, as interfering with the province of the jury in deciding on the weight of testimony. But I do not think it liable to that objection. The court was not called on to say what facts were proved, but merely to say what the law would be on facts stated.
*640 I am for affirming the judgment of the circuit superiour court.
The other judges concurring, judgment of circuit court affirmed. ^